UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| OTIS BONDS,<br><br>         Plaintiff,<br><br>v.<br><br>CABARRUS COUNTY SCHOOLS.<br>         Defendant. | Case No. [1:25-cv-977]<br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

The Plaintiff, Otis Bonds ("Mr. Bonds" or "Plaintiff"), by and through undersigned counsel, hereby files this complaint against the Cabarrus County Board of Education. ("CCBE" or "Defendant"), and alleges the following:

  1. Mr. Bonds brings this action against Defendant for violations of Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 [42 U.S.C. §12112 *et seq*.], the Family Medical Leave Act of 1993 ("FMLA") [29 U.S.C. § 2601 *et. seq*.], and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

  2. While out on leave, Mr. Bonds filed a lawsuit alleging race and age-based discrimination and retaliation against his employer. He submitted letters from his medical health providers permitting his return to work and requesting reasonable accommodations upon his return to the office.

  3. The Defendant did not respond to his requests to return to work or his requests for reasonable accommodation.

1

4. Defendant transferred Mr. Bonds to the State Retirement Division umbrella and effectively discharged him from employment.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff is a resident of Cabarrus County, North Carolina.

6. Defendant, Cabarrus County Board of Education, is an education agency headquartered in Concord, North Carolina.

7. Defendant's principal office is located at 4401 Airport Road, Concord, NC 28025.

8. Defendant employed more than fifty (50) employees at all relevant times for at least 20 workweeks in 2023, 2024, and 2025.

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

10. All material allegations relative to the named defendants contained in this Complaint occurred in the State of North Carolina, in Cabarrus County. Therefore, the venue properly lies in this district, pursuant to 28 U.S.C. § 1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. On July 11, 2025, Plaintiff filed a Charge against Defendant alleging disability-based discrimination and retaliation. (Exhibit 1)

12. On July 30, 2025, Plaintiff received the "Notice of Right to Sue" from the EEOC. (Exhibit 2)

13. This action was timely filed within 90 days of receipt of that notice.

14. Before filing this action, Plaintiff exhausted the administrative remedy on all claims pled hereunder.

## GENERAL ALLEGATIONS

15. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

16. Plaintiff began his employment with Defendant as a Break/Fix Supervisor on or about December 2015.

17. Plaintiff complained of discriminatory treatment due to race and age following an incident in September 2022.

18. Despite continuing to objectively meet the requirements for his position, Defendant placed Plaintiff on a performance improvement plan ("PIP") shortly thereafter.

19. The criteria of Plaintiff's PIP included additional assignments that varied weekly.

20. Defendant removed Plaintiff's authority to assign tasks to subordinates, stripped him of his autonomy to perform his essential duties, and instructed him to courtesy copy senior leaders on all emails, regardless of the nature of the email or its importance.

21. Defendant's actions caused Plaintiff to suffer severe stress and anxiety that impacted his physical health to the point where he was eventually hospitalized due to stress in June 2023.

22. Plaintiff had no history of severe stress or anxiety before his placement on the PIP.

23. Plaintiff suffers from major depressive disorder and post-traumatic stress disorder.

24. The conditions impact his concentration, sleep, mood, and appetite.

25. At his doctor's recommendation, Plaintiff took leave under FMLA in June 2023 following his hospitalization.

26. Defendant continued its retaliation against Plaintiff following his return from FMLA leave in August 2023.

27. At his doctor's direction, Plaintiff requested and was granted short-term disability leave due to his medical condition in April 2024.

28. Plaintiff became eligible for protected leave under FMLA while he was out on short-term disability leave.

29. On August 16, 2024, the EEOC issued a notice of right to sue letter on Plaintiff's race and age-based discrimination claims.

30. On November 4, 2024, to facilitate Plaintiff's return to work, he submitted a letter to Defendant from his mental health provider listing potential reasonable accommodations.

31. On November 8, 2024, Plaintiff submitted a separate letter from his physician discussing reasonable accommodations that would allow Plaintiff's return to work.

32. On November 14, 2024, Plaintiff filed a lawsuit against Defendant alleging race and age-based discrimination and retaliation.

33. Mr. Bonds followed up regarding his requests for reasonable accommodations and his return to work on or about January 12, 2025.

34. Defendant's Human Resources Department confirmed receipt of his messages, but never responded to Plaintiff's request to return to work or his requests for a reasonable accommodation.

35. Instead, Defendant sent Plaintiff forms to extend his leave under short-term and eventually long-term disability.

36. In February 2025, Defendant sent a pre-filled NC Form 704 to Plaintiff with the box "long-term" disability box checked instead of the "extended short-term" box.

37. Plaintiff reiterated to Defendant that he was available to return to work with accommodations.

38. On April 17, 2025, Defendant issued a letter to Plaintiff stating that his short-term disability was extended from April 2025 to April 2026, and that he was no longer considered an employee of Cabarrus County Schools and would fall under the State Retirement Division umbrella.

39. Plaintiff's insurance coverage with Defendant ended on April 30, 2025 and his health insurance with the State Retirement System Division began on June 1, 2025.

40. On July 11, 2025, Plaintiff filed a notice of dismissal of his November 2024 lawsuit.

41. On July 11, 2025, Plaintiff filed a new EEOC charge against Defendant alleging ADA discrimination and retaliation.

42. On July 30, 2025, the EEOC issued a right-to-sue letter to Defendant on Plaintiff's July 11, 2025 charge.

### Count One
### (Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112, *et seq.*)

43. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

44. Defendant regularly employed more than fifteen (15) employees at all relevant times.

45. Plaintiff was disabled in that he had a physical or mental impairment that substantially limited one or more major life activities.

46. Defendant otherwise perceived the Plaintiff as disabled at the time of Plaintiff's termination and in the lead-up to his termination.

47. Defendant violated the Americans with Disabilities Act by repeatedly failing to engage in the interactive process and respond to Plaintiff's requests for a reasonable accommodation.

48. Plaintiff was treated less favorably than similarly situated employees outside of his protected class.

49. Plaintiff suffered damages as a result of Defendants' unlawful actions, including emotional distress, past and future lost wages, interest, and the costs of bringing this action.

50. Defendant intentionally violated Plaintiff's rights under the ADA with malice or reckless indifference, and as a result, are liable for punitive damages.

### Count Two
### (Retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12203, *et seq.*)

51. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

52. Plaintiff engaged in protected activity by requesting reasonable accommodations from Defendant.

53. Defendant retaliated against Plaintiff for exercising his statutory right to request a reasonable accommodation.

54. These acts were done to punish Plaintiff and would have dissuaded a reasonable employee from engaging in protected activity.

55. Plaintiff may be unaware of additional detrimental acts constituting retaliation.

56. The actions taken by the Defendant were done in response to Plaintiff's protected activity, were designed to dissuade a reasonable worker from complaining about discrimination or otherwise engaging in protected activity, and such conduct by Defendants constitutes illegal retaliation, prohibited by federal **and state** statutes.

57. Due to its illegal actions, the Defendant must pay damages in an amount to be determined at trial for compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, lost wages, interest, and the costs of bringing this action.

58. The Defendant engaged in such actions with malice or reckless indifference to Plaintiff's federally protected rights, and Defendant must pay Plaintiff an additional amount in punitive damages for the sake of example and by way of punishment in an amount deemed sufficient by the jury.

59. Plaintiff has had to obtain the services of an attorney to protect his rights and secure compensation for the damages incurred when Defendant violated the ADA. Therefore, he is entitled to recover reasonable attorneys' fees against the Defendant.

## Count Three
### (Violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et. seq.*)

60. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

61. Plaintiff was an eligible employee within the meaning of the FMLA.

62. Plaintiff was employed by the Defendant for at least twelve months and for at least 1,250 hours of service.

63. Defendant is and was, at all times relevant, an employer within the meaning of the FMLA and employed 50 or more employees within a 75-mile radius where Plaintiff worked.

64. Plaintiff's extended leave due to his medical condition squarely falls under FMLA.

65. Defendant did not allow Plaintiff to take FMLA leave after 2023 and instead only offered extended short-term disability leave.

66. Defendant's actions were done in violation of the FMLA.

67. As a proximate result of Defendant's wrongful conduct, Plaintiff has suffered lost back and future wages, benefits, severe emotional distress, anxiety, humiliation, medical expenses, and other compensatory damages.

68. As a proximate and direct result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages, including emotional distress, inconveniences, loss of income, humiliation, and other indignities.

69. Defendant.

## Count Four
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964

70. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

71. Plaintiff engaged in protected activity by filing a lawsuit against Defendant opposing discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

72. Defendant retaliated against Plaintiff by refusing to allow his return to work after the lawsuit was filed and eventually terminating his employment.

73. Defendant's act was done to punish Plaintiff and would have dissuaded a reasonable employee from engaging in protected activity.

74. Plaintiff may be unaware of additional detrimental acts constituting retaliation.

75. The actions taken by Defendant were done in response to Plaintiff's protected activity, were designed to dissuade a reasonable worker from complaining about discrimination or otherwise engaging in protected activity, and such conduct by Defendant constitutes illegal retaliation, prohibited by federal and state statutes.

76. Due to its illegal actions, the Defendant must pay damages in an amount to be determined at trial for compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

77. Plaintiff has had to obtain the services of an attorney to protect his rights and secure compensation for the damages incurred when Defendant violated Title VII. Therefore, he is entitled to recover reasonable attorneys' fees against the Defendant.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in his favor as follows:

1. Back and front pay, including benefits to the fullest extent permitted by law;

2. Compensatory and punitive damages;

3. Injunctive relief;

4. Pre-judgment and post-judgment interest;

5. An award of reasonable attorneys' fees, expenses, and costs incurred in connection with this action;

6. That Plaintiff recover as damages from Defendants, jointly and severally, in an amount to be determined at trial for interference with contractual relations; and

7. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims properly triable by a jury.

This 28th day of October, 2025.

/s/ *Kirton M. Madison*
Kirton M. Madison
North Carolina State Bar No.43029
MADISON LAW, PLLC
8936 Northpointe Executive Park Drive
Suite 240-260
Huntersville, NC 28078
Tel: (704) 981-2790
Fax: (704) 930-0648
kmadison@madlawpllc.com
*Attorney for Plaintiff*